UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY CORMIER,<br>Plaintiff,<br>v.<br>UNIDINE CORPORATION,<br>Defendant. | No. 2:24-cv-01661-DC-JDP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br>(Doc. No. 9) |

This matter is before the court on Defendant's motion to compel arbitration of Plaintiff's claims. (Doc. No. 9.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 12.) For the reasons explained below, the court will grant Defendant's motion to compel arbitration and stay all proceedings pending completion of arbitration.

**BACKGROUND**

On May 7, 2024, Plaintiff Henry Cormier filed the complaint initiating this employment action in El Dorado County Superior Court. (Doc. No. 1-2.) On June 10, 2024, Defendant removed the action to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1441(b). (Doc. No. 1.)

In the complaint, Plaintiff alleges he was employed by Defendant Unidine Corporation between July 2021 and May 2022. (*Id.* at ¶¶ 14, 21.) Plaintiff alleges that despite receiving

positive reviews from his co-workers and supervisors, he was terminated due to his "failed background check," specifically his prior conviction record. (*Id.* at ¶¶ 21, 22.) Plaintiff alleges Defendant violated California law by, among other acts, failing to conduct a detailed individualized assessment regarding Plaintiff's conviction history before terminating him. (*Id.* at ¶¶ 22, 23.) Plaintiff brings eleven claims against Defendant relating to his employment and termination: (1) retaliation and wrongful termination in violation of California's Fair Employment and Housing Act ("FEHA"); (2) retaliation and wrongful termination in violation of public policy; (3) violation of California's Fair Chance Act; (4) failure to prevent discrimination and harassment in violation of FEHA; (5) failure to pay overtime wages in violation of California Labor Code §§ 510, 1194, and 1198; (6) failure to pay meal period premiums in violation of California Labor Code §§ 226.7 and 512(a); (7) failure to pay rest period premiums in violation of California Labor Code § 226.7; (8) failure to pay minimum wage in violation of California Labor Code §§ 1194, 1194.2, and 1197; (9) failure to furnish timely and accurate wage statements in violation of California Labor Code § 226(a); (10) failure to timely pay wages upon termination in violation of California Labor Code §§ 201 and 202; and (11) violations of California Business & Professions Code §§ 17200, *et seq*. (*Id.* at 8–20.)

On November 22, 2024, Defendant filed the pending motion to compel arbitration and to stay proceedings. (Doc. No. 9.) In that motion, Defendant alleges that upon Plaintiff's hiring, he entered into a binding arbitration agreement pursuant to which he agreed to "utilize binding individual arbitration as the sole and exclusive means to resolve all legal claims between [the parties], including without limitation those that may arise out of or be related to [his] employment, compensation, or termination of employment," and to "specifically waive [his] right[] to a jury." (Doc. Nos. 9-1 at 3; 9-3 at 9) (emphasis omitted). The arbitration agreement provides, in relevant part:

> I and Compass Group USA, Inc. and its subsidiaries, sectors, affiliates, and divisions (collectively, "Compass Entities") mutually agree to utilize binding individual arbitration as the sole and exclusive means to resolve all legal claims between us, including without limitation those that may arise out of or be related to my employment, compensation, or termination of employment. I and the Compass Entities waive our rights to bring a claim against the other

> in a court of law and in doing so, ***specifically waive our rights to a jury***. Except as provided below, any claim, dispute, and/or controversy that I may have against the Compass Entities (or their directors, officers, employees, or agents), or that the Compass Entities may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA") (in conformity with the procedures of the California Arbitration Act - Cal. Code Civ. Proc. Sec 1280 et seq. including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery). The FAA applies to this Agreement because my employer's business involves interstate commerce.

(Doc. Nos. 9-1 at 6; 9-3 at 9) (emphasis in original). Defendant contends that Plaintiff agreed to be bound by the terms of the arbitration agreement by electronically signing the agreement during the onboarding process. (Doc. No. 9-1 at 10.)

On December 6, 2024, Plaintiff filed an opposition to the pending motion. (Doc. No. 10.) Plaintiff argues that the purported arbitration agreement is unenforceable because Defendant failed to authenticate Plaintiff's purported electronic signature, because the agreement does not encompass Plaintiff's statutory claims, and because the agreement is unconscionable. (*Id.* at 9–21.) On December 16, 2024, Defendant filed its reply thereto. (Doc. No. 11.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA")[1] provides that contractual arbitration agreements

---

[1] Plaintiff contends that the arbitration agreement is governed under California law, not the FAA, because Defendant "does not describe how the employee-employer relationship between Plaintiff and Defendant has a specific effect on interstate commerce" such that "the FAA does not preempt California law in this instance." (Doc. No. 10 at 17.) Plaintiff ignores, however, that in the arbitration agreement the parties explicitly agree that "[t]he FAA applies to this Agreement because my employer's business involves interstate commerce." (Doc. No. 9-3 at 9.) This provision is sufficient to establish that the FAA governs. *Mejia v. Dick's Sporting Goods, Inc.*, No. 2:25-cv-11645-JFW-MAA, 2026 WL 796910, at *2, n.1 (C.D. Cal. Mar. 18, 2026) ("[P]arties can contract for the FAA to apply to their contract even in the absence of the defendant's business engaging in interstate commerce.") (citing *Tuufuli v. W. Coast Dental Admin. Servs.*, 117 Cal. App. 5th 1048 (2026), *review granted* 585 P.3d 785 (Mar. 25, 2026)). Further, Defendant provides a declaration from its human resources manager attesting that Defendant participates in commerce across the United States, including that Defendant "purchases goods and supplies that are manufactured outside of California" and requires its employees to "conduct phone calls and send mail . . . across state lines." (Doc. No. 9-4 at ¶ 3.) This is sufficient to establish a relationship to interstate commerce such that the FAA applies independent of the choice of law provision. *See Allied-Bruce Terminex Cos., Inc. v. Dobson*, 513 U.S. 265, 282 (1995) (stating that "multistate nature of" defendant's business and that "material used . . . came from outside" the forum state were sufficient to establish interstate nexus).

"evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a national policy favoring arbitration when [] parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). For this reason, a court's role in considering a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000). "If the court answers both questions in the affirmative, it must 'enforce the arbitration agreement in accordance with its terms.'" *Johnson v. Walmart Inc*., 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020)). A defendant seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. *Reichert v. Rapid Invs., Inc*., 56 F.4th 1220, 1227 (9th Cir. 2022).

## ANALYSIS

### A. Existence of Agreement to Arbitrate

Defendant contends that Plaintiff entered into a valid and enforceable arbitration agreement on July 19, 2021.[2] (Doc. No. 9-1 at 6–7.) In opposition, Plaintiff contends that he did not agree to enter into the arbitration agreement, did not intend to be bound by it, and that if Defendant did present him with the arbitration agreement, he would not have signed it. (Doc.

---

[2] Defendant additionally contends that, because the arbitration agreement mandates that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the enforceability, applicability, or interpretation of this agreement," the threshold question of the arbitration agreement's validity is properly delegated to the arbitrator. (Doc. No. 11 at 8.) However, "a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause." *Caremark LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). Thus, because Plaintiff challenges whether the agreement to arbitrate was formed, that question is properly before the court despite the delegation provision.

Nos. 10 at 11; 10-1 at ¶¶ 7, 8.) Plaintiff further argues that Defendant has not shown that the electronic signature affixed to the arbitration agreement is his signature. (*Id.*)

Courts apply state law in determining whether a valid contract to arbitrate exists. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). The parties do not specifically address which state's law is applicable to this dispute, but both analyze the existence of the agreement under California law. (Doc. Nos. 10 at 10–14; 11 at 8–12.) Under California law, "[o]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 39 Cal. App. 4th 1042, 1049 (2001). This is true regardless of whether the party read and understood the terms before signing. *Id*. In California, an electronic signature is a valid form of acceptance. *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1069 (2016) ("Under Civil Code section 1633.7 . . . an electronic signature has the same legal effect as a handwritten signature.") (citing *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 843 (2014)). The party seeking to compel arbitration is not initially required to authenticate an opposing party's electronic signature. *Espejo*, 246 Cal. App. 4th at 1059. However, when, as here, the authenticity of an electronic signature is contested, the burden of proof shifts to the movant to prove by a preponderance of the evidence that the signature is authentic. *Id.*

Plaintiff contends that the evidence submitted by Defendant to support the authenticity of the electronic signature is insufficient because the declarant who attested as to the validity of Plaintiff's electronic signature, Sandy Bailey, did not personally witness, and therefore does not have personal knowledge of Plaintiff's execution of the arbitration agreement. (Doc. No. 10 at 13–14.) In addition, Plaintiff contends that Bailey failed to show that only Plaintiff could have affixed his electronic signature to the arbitration agreement. (*Id.*)

1. Personal Knowledge

Plaintiff contends that Bailey "does not explain how she knew Plaintiff had seen, much less signed, the arbitration agreement" because "her 'personal knowledge' is based on her review—from North Carolina—of Plaintiff's 'account' in Defendant's 'Document Center' of 'PeopleHub' after the fact." (Doc. No. 10 at 13.) Plaintiff cites *Gamboa v. Northeast Community*

*Clinic*, 72 Cal. App. 5th 158 (2021), as supporting the contention that this explanation by Bailey is insufficient to demonstrate personal knowledge of the authenticity of Plaintiff's signature. (*Id.*) In *Gamboa*, the appellate court held that the trial court properly excluded the defendant's proffered declaration supporting the existence of an arbitration agreement because the declarant "made significant assertions" relating to the plaintiff's employment and the arbitration agreement but "did not provide the requisite preliminary facts to show she had personal knowledge about what was said in" the declaration. 72 Cal. App. 5th at 169. The court further emphasized that, even had the trial court admitted the declaration, it "would not have compelled a finding in the [defendant's] favor" because the declarant "did not explain how she knew [the plaintiff] had seen, much less signed, the arbitration agreement." *Id.* at 170.

Here, on the other hand, Bailey attests that she is "a HRIS Operations Manager" for Defendant and that in that capacity she "oversee[s] the onboarding process for all new employees . . . including the process by which employees electronically view, acknowledge, and accept new hire documents such as [Defendant's] Arbitration Agreement." (Doc. No. 9-3 at ¶ 2.) Bailey further attests that one of the onboarding software systems she works with is PeopleHub, "a password protected online portal[] for applicants and new hires to apply for employment, and complete, acknowledge, and review employment policies, records, and forms during the onboarding process since at least 2017." (*Id.* at ¶ 3.) Bailey attests that she "reviewed the documents securely archived and stored for [Plaintiff]" in his PeopleHub account and "personally retrieved" the arbitration agreement from his account to attach to Defendant's motion. (*Id.* at ¶ 11.)

Thus, unlike the defendant in *Gamboa*, Defendant provides a supporting declaration detailing the declarant's personal knowledge of the systems used to facilitate Plaintiff's execution of the arbitration agreement and the declarant's personal knowledge of how that document was stored, retrieved, and authenticated. Accordingly, Defendant has submitted sufficient evidence to prove that Bailey has personal knowledge of the process by which Plaintiff executed the arbitration agreement, and by which Defendant authenticated that signature. To the extent Plaintiff contends that Defendant must provide the declaration of someone who personally

witnessed him execute the arbitration agreement to establish personal knowledge, that position is not supported by the decisions he cites, nor by any authority this court is aware of. *See Wash. Cent. R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993) ("Personal knowledge, however, is not strictly limited to activities in which the declarant has personally participated . . . [P]ersonal knowledge can come from review of the contents of files and records.") (citing *Longdrian v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174–75 (D.C. Cir. 1981)).

2. Plaintiff's Exclusive Ability to Execute Arbitration Agreement

Plaintiff further argues that Defendant failed to show that "no one other than Plaintiff could have electronically signed" the arbitration agreement. (Doc. No. 10 at 14.) Plaintiff primarily relies on the decision in *Ruiz* to support this contention. (*Id.*) In *Ruiz*, the defendant provided the declaration of its business manager in support of its motion to compel arbitration. *Ruiz*, 232 Cal. App. 4th at 839. The business manger attested that she was "required to be familiar with the generation and maintenance" of employee records, but "did not explain how [the defendant] verified that [the plaintiff], or other [] employees, electronically signed the [arbitration] agreement." (*Id.*) Specifically, the court in *Ruiz* emphasized that the declarant "summarily asserted in her initial declaration that [the plaintiff] was the person who electronically signed the [arbitration agreement] . . . but she did not explain how she arrived at that conclusion or inferred [the plaintiff]" signed the agreement. *Id.* at 843. The court explained that rather than providing key details such as "that an electronic signature in the name of [the plaintiff] could only have been placed on the [arbitration] agreement by a person using [the defendant's] 'unique login ID and password,'" "that the date and time printed next to the electronic signature indicated the date and time the electronic signature was made," and "that all [of the defendant's] employees were required to use their unique login ID and password when they logged into the HR system and signed electronic forms and agreements," the declarant "only offered her unsupported assertion that [the plaintiff] was the person who electronically signed the [arbitration] agreement." *Id.* at 844. Thus, Plaintiff's reliance on the decision in *Ruiz* is unavailing as that is a factually distinguishable case.

The court is more persuaded by the decision in *Espejo*, a factually similar case. Unlike in *Ruiz*, the defendant in *Espejo* provided a supporting declaration from its systems consultant that "detailed [the defendant's] security precautions regarding transmission and use of an applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the" arbitration agreement. *Espejo*, 246 Cal. App. 4th at 1062. Based on this procedure, the declarant attested that the plaintiff's name "could have only been placed on the signature pages of the [arbitration agreement] by someone using [the plaintiff's] unique username and password." *Id.* Thus, the court in *Espejo* found that the details provided in the supporting declaration "satisfactorily . . . establish that the electronic signature on the [arbitration agreement] was 'the act of' [the plaintiff] . . . and therefore provide the necessary factual details to properly authenticate the document." *Id.*

Here, Bailey attests based on her personal knowledge that when a new hire first encounters PeopleHub, the new hire "must enter both a username and a unique password in order to proceed," and the new hire will use this unique password to "review and acknowledge[] [their] onboarding documents such as the Arbitration Agreement." (Doc. No. 9-3 at ¶ 6.) Bailey further explains that when a new hire "review[s] and acknowledge[s] onboarding documents, they are prompted to enter their password a second time before signing the document." (*Id.* at ¶ 8.) According to Bailey, "after the employee signs the documents," "no one may edit or alter the PDF documents." (*Id.* at ¶ 10.) After reiterating the many procedures Plaintiff would have had to satisfy to electronically sign the arbitration agreement, Bailey attests that Plaintiff "was the only individual who would have been able to sign the Agreement, and no one within [Defendant] could have changed it." (*Id.* at ¶ 14.)

The court finds that Bailey's supporting declaration is substantially similar to that in *Espejo*, and it is likewise sufficient to demonstrate her personal knowledge of Defendant signing the arbitration agreement. Thus, Defendant has met its burden of showing, by a preponderance of the evidence, that the electronic signature attached to the arbitration agreement is the act of Plaintiff.

/////

**B. Waiver of Statutory Claims**

Plaintiff next argues that his statutory claims cannot be compelled to arbitration because "[i]n California, statutory claims may proceed in court regardless of an agreement to arbitrat[e]." (Doc. No. 10 at 15) (citing Cal. Labor Code § 229) (emphasis omitted). However, as Plaintiff concedes, "an arbitration agreement that is governed by the FAA will pre-empt California law" such that statutory claims may be compelled to arbitration. (Doc. No. 10 at 15) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.").

As discussed above, the arbitration agreement is governed by the FAA both because the parties agreed that the FAA would apply (*see* Doc. No. 9-3 at 9), and because Defendant has provided sufficient evidence of a relationship to interstate commerce for the FAA to preempt California law. Accordingly, the FAA preempts any California law precluding arbitration of Plaintiff's statutory claims.[3]

**C. Unconscionability**

Plaintiff argues that the arbitration agreement is void as procedurally unconscionable because it is a contract of adhesion and because it does not attach a copy of the governing arbitration rules, and substantively unconscionable because the agreement does not permit non-party discovery and because the agreement does not permit judicial review of the arbitrator's decision. (Doc. No. 10 at 18–20.)

As discussed above, the arbitration agreement requires that "the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the enforceability, applicability, or interpretation of this agreement, including without limitation any claim that it is void or voidable." (Doc. No. 9-3 at 9.) Where a party opposing arbitration contends that the entire arbitration agreement is unconscionable, rather than the delegation

[3] Defendant further argues that California's waiver of statutory claims from arbitration applies only to union-negotiated bargaining agreements, not to individual arbitration agreements. (Doc. No. 11 at 14.) Because the arbitration agreement is governed by the FAA, the court need not address that argument here.

provision specifically, the authority to determine unconscionability is properly delegated to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015) ("[S]ince [the plaintiff] failed to make any arguments specific to the delegation provision, and instead argued that the Arbitration Clause *as a whole* is unconscionable under state law, we need not consider that claim, because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question. . . ."); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (holding that delegation provision substantially similar to the delegation provision here delegated question of unconscionability to arbitrator).

Here, Defendant does not contest that the delegation provision is unconscionable, only that the arbitration agreement as a whole is unconscionable. Thus, given the parties' agreement to delegate questions of arbitrability to the arbitrator, the question of whether the arbitration agreement is void as unconscionable is properly delegated to the arbitrator.

**CONCLUSION**

For the reasons explained above:

1. Defendant's motion to compel arbitration of Plaintiff's claim (Doc. No. 9) is GRANTED;
2. This action is stayed in its entirety pending the completion of arbitration of Plaintiff's claims;
3. The parties shall file a joint status report ninety (90) days from the date of entry of this order, and every 90 days thereafter, regarding the status of the arbitration proceedings; and

/////

/////

/////

/////

/////

/////

/////

4. Within fourteen (14) days of the completion of the arbitration proceedings, the parties shall file a joint status report to notify the court of the arbitrator's decision and request that the stay of this case be lifted.

IT IS SO ORDERED.

Dated: **August 24, 2026**

Dena Coggins
United States District Judge